UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JENNIFER DANIEU and
KATHLEEN McLAUGHLIN,

Plaintiffs,

v.

**DECISION AND ORDER**
08-CV-00500S

TEAMSTERS LOCAL 264, I.B. OF T.C.W., RICHARD CARR, In His Capacity as Union Steward of Teamsters Local 264 and JAMES BALYS , In His Capacity as Union Steward of Teamsters Local 264,

Defendants.

## I. INTRODUCTION

Plaintiffs Jennifer Danieu and Kathleen McLaughlin commenced this employment discrimination action by filing a Complaint in the District Court for the Western District of New York. (Docket No. 1.) They subsequently filed an Amended Complaint in which they allege that Defendant Teamsters Local 264, I.B. of T.C.W. (hereinafter, "Local 264" or "Union") discriminated against them on the basis of sex and sexual orientation, retaliated against them, and denied them equal rights. Defendants Richard Carr (hereinafter, "Carr") and James Balys (hereinafter, "Balys"), both Union Stewards, are alleged to have aided and abetted Local 264's discrimination and denied Plaintiffs' equal rights.

Plaintiffs bring this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (hereinafter, "Title VII"); the New York State Human Rights Law, N.Y. EXEC. L. §§ 296 et seq. (hereinafter, "NYHRL"); and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 (hereinafter, § 1981).

Presently before the Court are: Defendants' Motion to Dismiss the Amended Complaint in its entirety,[1] (Docket No. 10), Plaintiffs' Motion to Amend/Correct their Amended Complaint,[2] (Docket No. 12), and Defendants' Motion for Leave to File Additional Authority,[3] (Docket No. 19). For the reasons stated below, Defendants' Motion to Dismiss is granted, Plaintiffs' Motion to Amend/Correct is denied, and Defendants' Motion for Leave to File New Authority is granted.

## II. BACKGROUND

### A. Facts

Plaintiffs Jennifer Danieu (hereinafter, "Danieu") and Kathleen McLaughlin (hereinafter, "McLaughlin") were and continue to be employed by the Erie County Sheriff's Office as deputy sheriffs. (Amended Compl. ¶¶ 15-16.) At all relevant times Plaintiffs were members of Local 264, a labor organization representing a unit of Erie County Sheriff's deputies, sergeants, lieutenants, captains, and others. (Id. ¶¶ 4-7.)

In August 2005, Lt. Isch, one of Plaintiffs' supervising lieutenants and a member of Local 264, began spreading rumors that Plaintiffs were lesbians and lovers. (Id. ¶ 18.) On

---

[1] In support of their Motion to Dismiss, Defendants filed an Affirmation of Robert J. Reden, Esq., with Exhibits; a Memorandum of Law; a Reply Affirmation of Robert J. Reden, Esq.; and a Reply Memorandum of Law.

In opposition, Plaintiffs filed a Memorandum of Law and Affirmation of Anna Marie Richmond, Esq.

[2] In support of their Motion to Amend/Correct, Plaintiffs filed an Attorney Affirmation, with Exhibits; a Reply Memorandum of Law; and Reply Attorney Affirmation.

In opposition, Defendants filed a Memorandum of Law.

[3] In support of their Motion for Leave to File Additional Authority, Defendants filed an Attorney Affirmation, with Exhibits.

In opposition, Plaintiffs filed a Memorandum of Law, with Exhibits.

August 17, 2005, McLaughlin confronted Lt. Isch about the rumors, which led to more harassment from the lieutenant and other Local 264 members. (Id. ¶ 21.)

On October 18, 2005, Plaintiffs met with Local 264 representatives Balys and Carr to ask for their assistance in stopping the harassment and to advise them of their intent to file a complaint with the Erie County Sheriff's Office's EEO Officer, Patricia Brammer (hereinafter, "Officer Brammer"). (Id. ¶¶ 22-25.) Carr told Plaintiffs that Brammer could not do anything for them, and that he would speak to the supervising lieutenant and take care of the problems. (Id. ¶¶ 26-28.)

On March 27, 2006, Danieu was disciplined for tardiness. (Id. ¶ 31.) On that same date, McLaughlin received a letter of reprimand for alleged instances of tardiness, which Carr told her was in response to her August 17, 2005 confrontation with Lt. Isch. (Id. ¶¶ 32-33.)

In May 2006, Plaintiffs made a complaint about Lt. Isch to Officer Brammer. (Id. ¶ 34.) After an investigation, Officer Brammer concluded that several of Plaintiffs' complaints were founded, and Isch was demoted to the rank of sergeant on or about July 18, 2006. (Id. ¶ 35.) Local 264 grieved the demotion and succeeded in having Isch reinstated to his former rank of lieutenant. (Id. ¶¶ 41, 46.)

Plaintiffs believe that on August 24, 2006, Carr told certain union members that Plaintiffs were informing on other officers to Officer Brammer. (Id. ¶ 36.) As a result, Plaintiffs were ostracized and isolated at work, placing them in physical danger. (Id. ¶ 40.) On September 17, 2006, a sergeant warned McLaughlin that Carr was very powerful and had a lot of influence inside and outside of the building. (Id. ¶ 37.) Plaintiffs also believe Carr told Undersheriff Donovan that he would see to it that Plaintiffs are thrown out of the

Union. (Id. ¶ 48.)

**B. Procedural History**

Plaintiffs each filed a charge of discrimination with the New York State Division of Human Rights (hereinafter, "NYSDHR") on October 11, 2006. (Defs.' Ex. A, B.) Both charges allege discrimination based on sex and sexual orientation, and retaliation. (Id.) On February 8, 2008, the NYSDHR found no probable cause to believe Local 264 engaged in the unlawful discriminatory practices complained of by Danieu or McLaughlin. (Id. Ex. C, D.) On or about April 8, 2008, the EEOC adopted the findings of the NYSDHR and issued Plaintiffs notices of right to sue, which they received on or about April 11, 2008. (Amended Comp. ¶¶ 13, 14.)

Plaintiffs filed their Complaint with the Clerk of this Court on July 7, 2008 and their Amended Complaint on October 27, 2008. (Docket Nos. 1, 4.) They asserted claims for sex and sexual orientation discrimination, retaliation, and denial of equal rights.

Defendants moved to dismiss the Amended Complaint on grounds that: (1) § 1981 prohibits race discrimination, not sex discrimination; (2) the Court has no subject matter jurisdiction over Plaintiffs' NYHRL claims, which were previously dismissed by the NYSDHR; (3) some of Plaintiffs' allegations under Title VII are time-barred; (4) sexual orientation discrimination is not actionable under Title VII; (5) Plaintiffs did not oppose an employment practice that is actionable under Title VII and therefore did not engage in protected activity; (6) Plaintiffs' allegations do not rise to the level of an adverse employment action under Title VII; (7) Defendants are not the proper parties in an action alleging discrimination in the workplace; and, (8) Defendants had a fair duty to represent all members of Local 264.

In their response to the motion to dismiss, Plaintiffs expressly withdrew their third through sixth causes of action, which include all claims against Balys and Carr. At the same time, Plaintiffs filed a Motion to Amend/Correct their Amended Complaint. (Docket No. 12.) Their attached proposed Amended Complaint: (1) deletes the third through sixth causes of action (the NYHRL and § 1981 claims); (2) changes the caption name to "TEAMSTERS LOCAL 264, I.B. of T.C.W;" (3) amends their remaining causes of action of discrimination and retaliation; and (4) adds fact allegations regarding acts of discrimination.

On February 16, 2010, Defendants filed a Motion for Leave to File Additional Authority, to which Plaintiffs have responded. (Docket No. 19.) All motions are fully briefed and ready for disposition.

## III. DISCUSSION AND ANALYSIS

### A. Defendants' Motion for Leave to File Additional Authority

Local 264 asks the Court to consider an opinion issued after briefing on the pending motions was complete. (Defs.' Motion for Additional Authority, p. 1.) Specifically, Local 264 cites Ashcroft v. Iqbal, __ US __, 129 S.Ct. 1937 (2009) as the applicable standards for determining whether a pleading states a claim for relief. (Id. pp. 1-2.)

Plaintiffs argue that Local 264's motion should be denied as untimely since it was submitted one year after its motion to dismiss was filed and more than nine months after the Iqbal decision was rendered. (Pls.' Atty. Affirmation in Response to Defs.' Motion for Additional Authority, ¶ 2.) In the alternative, Plaintiffs ask the Court to consider two post-Iqbal cases, Gillman v. Inner City Broadcasting Corp., No. 08 Civ. 8909, 2009 WL 3003244

(S.D.N.Y. Sept. 18, 2009) and Hicks v. Baines, 593 F.3d 159 (2nd Cir. 2010). (Id.)

Local 264's motion for leave to file additional authority is granted, and Plaintiffs' request for consideration of additional authority is granted, as well.

**B. Plaintiffs' Motion to Amend/Correct the Amended Complaint**

**1. Timeliness**

Local 264 advances a timeliness argument in connection with both motions, so this aspect of the motions will be considered first.

Local 264 argues that any alleged incidents occurring prior to December 15, 2005 are untimely, whether in the Amended or proposed Amended Complaint. (Defs.' Opp. to Motion to Amend, pp. 2-3.) Plaintiffs state that they do not seek relief for time-barred discrimination and agree that, for purposes of Title VII, they may only complain of incidents occurring after December 15, 2005. (Pls.' Opp. to Motion to Dismiss, p. 5.)

An administrative charge for a claim of discrimination under Title VII must be filed within 300 days of the alleged unlawful conduct. Forsyth v. Fed'n Emp't and Guidance Serv., 409 F.3d 565, 572 (2d Cir. 2005) (citing 42 U.S.C. § 2000e-5(e)(1)); see Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982) ("filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling"). Plaintiffs filed their NYSDHR complaint on October 11, 2006; therefore discriminatory acts occurring before December 15, 2005 are time-barred and may only support a timely claim as "background evidence." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002).

Thus, the alleged rumors that Plaintiffs' supervising lieutenant was spreading about them in August 2005 is untimely, as is the Union's alleged act of discouraging Plaintiffs from filing a complaint with Officer Brammer in October 2005. (Pls.' Proposed Amended Compl. ¶¶ 18, 27.)

### 2. Motion to Amend Standard

Plaintiffs have moved for leave to file an amended complaint in which they seek to add the following timely allegations:

> 1. In December 2005, McLaughlin was singled out during a "line-up" by being asked questions about Danieu and being verbally reprimanded for showing up with wet hair. (Id. ¶ 28 (a).)
>
> 2. EEO investigator Brammer investigated Plaintiffs' complaints by, *inter alia*, conducting interviews of other employees whom the Plaintiffs identified as witnesses, and Balys accompanied certain witnesses to the interviews as their Union representative. When he did so, the witnesses refused to provide any information to Officer Brammer. (Id. ¶¶ 30-32.)

Local 264 argues that Plaintiffs' attempt to correct certain pleading deficiencies are futile because these allegations are not sufficient to render them liable. (Defs.' Opp. to Motion to Amend, p. 1.)

The Federal Rules of Civil Procedure provide that a party may amend a pleading only by leave of court or by written consent of the adverse party. Fed. R. Civ. P 15(a)(2). Rule 15(a), instructs that "[t]he court should freely give leave when justice so requires." Id.

The United States Supreme Court explained that leave is to be liberally granted,

> "[i]n the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment,

etc."

Forman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed. 222 (1962).

The Court finds that the added allegations to the proposed Amended Complaint are insufficient to establish Union liability, thus the amendment is futile.

Moreover, Plaintiffs seek to add a paragraph to each of their first two claims which essentially summarizes certain fact allegations as set forth in the Amended and Proposed Amended Complaints. As this does nothing to alter the factual basis for the claims or the claims themselves, amendment on this basis is futile. Assuming there is a defect, this is not sufficient to cure it.

Because the allegations contained in the proposed Amended Complaint are futile, Plaintiffs' motion to amend is denied.

**C. Defendants' Motion to Dismiss the Amended Complaint**

Local 264 argues the Amended Complaint should be dismissed for failure to state a claim upon which relief could be granted under Rule 12(b)(6), and on the grounds that the Court lacks subject matter jurisdiction under Rule 12(b)(1).

**1. Motion to Dismiss Standard**

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal pleading standards are generally not stringent. Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8(a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544,127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007) (internal quotation marks and alteration omitted).

Thus, "employment discrimination claims need not contain specific facts establishing

a *prima facie* case of discrimination." Gillman, 2009 WL 3003244 at *3. However, Plaintiffs must allege facts making it at least plausible that their gender or complaints about unlawful discrimination were a motivating factor in their employer's adverse employment action See Arista Records, LLC v. Doe 3, 604 F.3d 110, 120-21 (2nd Cir. 2010) (explaining that Twombly and Iqbal did not impose a heightened pleading requirement in employment discrimination cases and a plaintiff must only plead specific facts to make the claim plausible.

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007); Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008). However, to withstand a motion to dismiss, a plaintiff's "allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (internal quotation marks, citations, and alterations omitted). Legal conclusions are not afforded the same presumption of truthfulness. See Iqbal, ___ U.S. ___, 129 S.Ct. at 1949 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

**2. Analysis of Title VII Claims**

As discussed above, the only remaining claims in the amended and proposed amended complaints are discrimination and retaliation under Title VII.

**(a) Discrimination**

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1); Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S.Ct. 2148, 2150, 156 L.Ed.2d 84 (2003). To state a *prima facie* case, a plaintiff must show that (1) she is a member of a protected class, (2) she is qualified for his position, (3) she suffered an adverse employment action, and (4) the circumstances of the adverse action give rise to an inference of discrimination. Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2nd Cir. 2000) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

"A labor organization is liable for an employer's discrimination in the workplace if it causes or attempts to cause the employer to discriminate, 42 U.S.C. § 2000e-2(c)(3); or if the union 'purposefully acts or refuses to act in a manner which prevents or obstructs a reasonable accommodation by the employer,' Carter v. Chrysler Corp., 173 F.3d 693, 703-04 (8th Cir. 1999); or if the union 'pursue[s] a policy of rejecting disparate-treatment grievances' meant to vindicate employee rights protected by Title VII, Goodman v. Lukens Steel Co., 482 U.S. 656, 669, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987)." Thorn v. Amalgamated Transit Union, 305 F.3d 826 (8th Cir. 2002). Thus, a union is only liable under Title VII if it discriminates in the performance of its agency function. EEOC v. Pipefitters Local 597, 334 F.3d 656, 659 (7th Cir. 2003). In addition, "unions have no duty to take remedial action for discriminatory acts by their individual members," and Local 264 cannot be held liable simply because workplace harassment was perpetrated by union

members. Eliserio v. United Steelworkers of America Local 310, 398 F.3d 1071, 1077 (8th Cir. 2005).

The discriminatory acts Plaintiffs allege they were subjected to and Local 264's response to those allegations are as follows:

Union Steward Balys Accompanied Employees to EEO Interviews

Plaintiffs allege Balys was present at a number of interviews and those employees and Union members who were accompanied by him refused to provide any information to Officer Brammer. (Pls.' Proposed Amended Compl. ¶¶ 31-32.)

Local 264 argues that this is not actionable even if the Court assumes that Balys advised the employees not to talk to Officer Brammer. (Defs.' Opp. to Motion to Amend, p. 4.) Plaintiffs do not respond to this argument, thus they concede the allegations are insufficient to render the Union liable.

Interfering with an employer's investigation by directing union members "not to answer any of [the employer's] questions even with their Union representative present" is not actionable harassment. Thorn, 503 F.3d at 831. Thus, Balys' presence during the employer's interviews, even assuming he instructed Union members not to share information with Officer Brammer, does not amount to "actively supporting the discriminatory acts." Eliserio, 398 F.3d at 1077 (internal quotes omitted); accord Pipefitters Local 597, 334 F.3d at 660-61; Anjelino v. New York Times Co., 200 F.3d 73, 95-96 (3rd Cir. 1999).

Thus, the allegation is insufficient to sustain a Title VII discrimination claim.

Local 264 successfully overturned Isch's demotion

Plaintiffs contend that Local 264 pursued the grievance of Plaintiffs' harasser and

succeeded in having him reinstated to his former rank. (Pls.' Proposed Amended Compl. ¶ 44.)

Local 264 urges that it has a duty of fair representation to all of its members and the fact that it represented Plaintiffs' alleged harasser is not actionable under Title VII. (Defs.' Memo. in Support of Motion to Dismiss, p. 23.) It states Plaintiffs fail to allege that it pursued the grievance in bad faith or supported the harassment itself. (Id. p. 25.)

Unions have a "duty of fair representation" of all of its members. See New York Civil Service Law § 209-a(2)(c). Thus, the Union was bound to represent Isch in his grievance with his employer. The grievance did not involve Plaintiffs, and they do not allege that Local 264 breached its duty of fair representation to them. It does not follow that Plaintiffs suffered an adverse employment action because an arbitrator restored Isch to his rank of lieutenant after the grievance hearing during which he was represented by his Union.

Thus, the allegation is not sufficient to sustain a Title VII discrimination claim.

**(b) Retaliation**

In both the amended and proposed Amended Complaint, Plaintiffs allege that Local 264 retaliated against them for filing an EEO charge with Officer Brammer.

Title VII prohibits employers and labor organizations from discriminating against an employee for making a charge, testifying, assisting, or participating in an investigation or proceeding. 42 U.S.C. §§ 2000e-3(a). To establish a *prima facie* case of retaliation by a union, a plaintiff must show that (1) she participated in a protected activity, (2) her participation was known to the union, (3) she suffered an adverse employment action, and (4) a causal connection exists between the protected activity and the union's actions.

Yeardon v. Henry, 91 F.3d 370, 377 (2nd Cir. 1996) (citing Johnson v. Palma, 931 F.2d 203, 307 (2nd Cir. 1991)). An adverse action in a retaliation case is not limited to an employer's actions that affect terms, conditions, status of employment, or those that occur at the workplace. Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 62, 126 S.Ct. 2405, 2411-12 (U.S. 2006). Rather, the question is whether the action is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." Hicks, 593 F.3d at 165. (Citation omitted).

The retaliatory acts Plaintiffs allege they were subjected to and Local 264's responses to those allegations are as follows:

McLaughlin Singled Out During a "line-up"

Plaintiffs allege McLaughlin was singled out during a "line-up" for questions about Danieu, and verbally reprimanded for showing up with wet hair. (Pls.' Proposed Amended Compl. ¶ 28(a).)

Local 264 argues these allegations, if accepted as true, do not constitute adverse employment actions. (Defs.' Opp. to Motion to Amend, p. 3.) Local 264 further argues the allegations involve employer conduct, not union conduct. (Id.) Plaintiffs do not respond to this argument, thus they appear to concede these allegations do not amount to an adverse employment action.

It is well settled that "reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment action." Bennet v. Watson Wyatt & Co., 136 F. Supp.2d 236, 248 (S.D.N.Y. 2001). In addition, the adverse action must be caused by the union in order to be attributable to the union. Thorn, 305 F.3d at 831. As Local 264 have pointed out, the actions Plaintiffs complain of are employer, not union conduct, even

if the people singling Danieu out are part of Local 264.

Thus, the allegation is insufficient to sustain a Title VII retaliation claim.

Discipline for Tardiness

Plaintiffs allege that in December 2005 and March 2006, McLaughlin was disciplined for minor tardiness by a captain who was a member of Local 264. (Pls.' Proposed Amended Compl. ¶ 28(b).) And, that Danieu was disciplined for tardiness in March 2006. (Id. ¶ 28(c).)

Local 264 argues that McLaughlin's "letter of reprimand" was because of her August 17, 2005 confrontation with the supervising lieutenant, not because of her gender. (Defs.' Memo. in Support of Motion to Dismiss, p. 16.) Further, that Danieu's discipline for being tardy consisted of a "letter of counsel," which is not a disciplinary action, and is attributable to Danieu's employer, not the Union. (Id. pp. 15-16.) Plaintiffs do not respond to this argument, thus they appear to concede these allegations do not amount to an adverse employment action.

As discussed above, written or verbal reprimands, without more, cannot be considered adverse employment actions. Plaintiffs fail to allege that Danieu's letter of counsel or McLaughlin's letter of reprimand resulted in any tangible adverse employment action. Plaintiffs also fail to allege that Local 264 has control over their employment or had any influence in the employer's decision to give them letters of reprimand.

Because a letter of reprimand would not deter a rational employee from making a claim, these allegations are insufficient to sustain a Title VII retaliation claim.

Union Steward Carr told Union workers Plaintiffs were informing on Officers

Plaintiffs allege Carr met informally with Union workers to tell them Plaintiffs were

informing on other officers to EEO Officer Brammer. (Pls.' Proposed Amended Compl. ¶ 34.)

Local 264 argues that simply mentioning the EEO filings, without more, could not possibly rise to the level of an adverse employment action. (Defs.' Memo. in Support of Motion to Dismiss, p. 18.) Local 264 compares these facts to the facts in Holloway v. Dep't of Veterans Affairs, where the plaintiff's supervisor stated to two of his co-workers that he was "creating problems by filing EEO complaints." 2008 WL 624708 at * 1 (S.D.Tex. March 5, 2008). The court held that "simply mentioning EEO filings and their impact in the workplace does not, without more, rise to the level of an adverse employment action for purposes of a Title VII retaliation claim." Id. at *2. The court found these comments were not ones that might dissuade a reasonable worker from making or supporting a charge of discrimination. Id. at *3. Plaintiffs, once again, do not respond to this argument, thus they appear to concede the allegations do not amount to an adverse employment action.

Following the Court's reasoning in Holloway, the allegation is insufficient to sustain a Title VII retaliation claim.

Plaintiffs Were Told to Be Careful

Plaintiffs allege a sergeant told them to be "cautious and careful" because Carr was very powerful and influential. (Pls.' Proposed Amended Compl. ¶ 35.) Plaintiffs took this as a relayed, indirect threat. (Id. ¶ 37.)

Local 264 argues this alleged statement is not an adverse employment action and is not related to sex, thus it is not actionable under Title VII. (Defs.' Memo. in Support of Motion to Dismiss, p. 20.) Further, that even if Plaintiffs understood it as an indirect threat from Carr, Carr has no authority over Plaintiffs and thus a reasonable employee would not

be affected by the statement such that they would hesitate to file a charge of discrimination. (Id. p. 20.)

The Second Circuit has held that supervisors' statements to "be careful" and "watch out" "does not bear any relationship to sexual discrimination," thus it is not a cognizable Title VII sexual discrimination claim. Kiley v. ASPCA, 296 Fed.Appx. 107, 110 (2nd Cir. 2008). Furthermore, although Plaintiffs state they felt the statement was a "relayed, indirect threat," they fail to allege that a reasonable employee would refrain from filing a charge of discrimination as a result of a statement to be "cautious and careful."

Thus, the allegation is insufficient to sustain a Title VII retaliation claim.

Plaintiffs Were Ostracized and Isolated at Work

Plaintiffs allege that as a result of rumors spread by Carr that they were informing on other officers to the EEO Office, Plaintiffs were ostracized and isolated at work, placing them in physical danger. (Pls.' Proposed Amended Compl. ¶ 38.)

Local 264 argues that being ostracized and isolated at work does not amount to adverse employment actions under Title VII. (Defs.' Memo. in Support of Motion to Dismiss, p. 18.) And, even if it were, Plaintiffs fail to allege they were ostracized and isolated because of a protected activity rather than some lawful factor. (Id. p. 19.)

It is well established ostracism and isolation at work is not enough to constitute an adverse employment action. See Carpenter v. City of Torrington, 100 Fed.Appx. 858, 860 (2nd Cir. 2004) ("silent treatment" does not amount to a "materially adverse change in the terms and conditions of employment"); Boyd v. Presbyterian Hosp., 160 F.Supp.2d 522, 537 (S.D.N.Y. 200) ("gossip" not an adverse employment action); Brooks v. City of San Mateo, 229 F.3d 917, 929 (9th Cir. 2000) ("Because an employer cannot force employees

to socialize with one another, ostracism suffered at the hands of coworkers cannot constitute an adverse employment action.").

In addition, Local 264 cannot be held liable simply because workplace harassment was perpetrated by union members. Eliserio, 398 F.3d at 1077. Thus, without any facts showing Local 264 actively supported the retaliatory acts, it cannot be held liable for the retaliation.

Thus, the allegation is insufficient to sustain a Title VII retaliation claim.

Carr stated Plaintiffs would be thrown out of the Union

Plaintiff alleges Carr told an Undersheriff he would see to it that Plaintiffs were thrown out of the Union. (Pls.' Proposed Amended Compl. ¶ 46.)

Local 264 argues this hearsay statement does not constitute an adverse employment action because Plaintiffs do not allege Carr has the authority to eject them from the Union. (Defs.' Memo. in Support of Motion to Dismiss, p. 21.) Local 264 also argues that a single threat to a third party would not dissuade a reasonable worker for filing a charge of discrimination. (Id. pp. 21-22.)

Plaintiffs have failed to allege that Carr had authority over their continued membership with the Union, thus the Court finds that a "single, unfulfilled rumor would not have dissuaded a reasonable worker from making a charge of discrimination." Smith v. Harvey, 265 Fed.Appx. 197, 201 (5th Cir. 2008).

The allegation is insufficient to sustain a Title VII discrimination or retaliation claim.

Local 264 successfully overturned Isch's demotion

This allegation is insufficient to sustain a Title VII retaliation claim for the same reasons as discussed above. The simple act of Local 264 pursuing a grievance for one

of its members does not render the Union liable for any alleged harassment by that union member.

* * *

Therefore, Defendants' motion to dismiss the amended complaint is granted. It is not necessary to discuss Defendant's argument that the court lacks subject matter jurisdiction over Plaintiffs' claims.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Leave to File Additional Authority is granted. Plaintiffs' Motion for Leave to Amend and Correct the Amended Complaint is denied. Defendants' Motion to Dismiss is granted.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Leave to File Additional Authority (Docket No. 19) is GRANTED.

FURTHER, that Plaintiffs' Motion for Leave to Amend and Correct the Amended Complaint (Docket No. 12) is DENIED.

FURTHER, that Defendants' Motion to Dismiss (Docket No. 10) is GRANTED.

FURTHER, that the Clerk of the Court is directed to take the steps necessary to close this case.

SO ORDERED.

Dated: March 30, 2011
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court